UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
ROUTE HOLDING INC. and                          :
BEAM COMPANY INC.,
                                                :
              Plaintiffs,
                                                :        06 Civ. 3428
       - against -
                                                :        ECF CASE
INTERNATIONAL OIL OVERSEAS INC.,
a.k.a. IOOI, and                                :
MARINA WORLD SHIPPING CORP.,
                                                :
              Defendants.
-------------------------------------------------------------X

## DECLARATION OF HARA ANASTASATOU
## IN SUPPORT OF PLAINTIFF'S OPPOSITION TO
## MOTION TO VACATE MARITIME ATTACHMENT

       Hara Anastasatou declares under penalty of perjury of the laws of the United States of

America as follows:

       1.     I am a claims administrator with the company Marmaras Navigation Ltd. and I

make this Declaration in Support of Plaintiffs' Opposition to Defendant, Marina World

Shipping's ("MWS") Motion to Vacate the Attachment.

       2.     Marmaras Navigation Ltd. was at all material times the commercial and technical

manager of the M/T DELTA SAILOR on behalf of Plaintiff Route Holding Inc. ("RHI") and of

the M/T PELAGOS on behalf of Plaintiff Beam Company Inc. ("BCI").

       3.     I work with Mr. Martin Glibbery, manger of the legal and insurance department

of Marmaras Navigation Ltd. regarding Plaintiffs' claims against IOOI and MWS.  I make this

declaration based upon my own personal knowledge and upon documents that I believe to be

true and accurate.

4.     Plaintiff RHI was at all material times the Owner of the motor tanker "DELTA SAILOR." Defendant, International Oil Overseas Inc. ("IOOI") was at all material times the charterer of the M/T DELTA SAILOR.

5.     By a charter party dated April 25, 2005, Plaintiff RHI chartered the M/T DELTA SAILOR to IOOI. *See RHI Charter Party annexed hereto as Exhibit "1."*

6.     IOOI was the only charterer named in the charter party contract.

7.     Certain disputes arose between RHI and IOOI during the course of the charter party contract regarding IOOI's failure to pay demurrage due and owing to RHI under the charter party.

8.     As a result of IOOI's breach of the charter party contract, RHI has suffered, and will continue to suffer, losses in the total principal sum of $11,395.31, as best can now be estimated, exclusive of interest, reasonable attorneys fees and arbitration costs.

9.     Pursuant to clause K and clause 24 of the charter party, all disputes arising thereunder are to be submitted to arbitration in London with English law to apply.

10.     Despite due demand, IOOI failed to pay the demurrage due and owing under the charter party. As a result, RHI has commenced arbitration and appointed an arbitrator.

11.     Plaintiff BCI was at all material times the Owner of the motor tanker "PELAGOS."

12.     By a charter party dated May 28, 2005, BCI chartered the M/T PELAGOS to IOOI. *See BCI Charter Party annexed hereto as Exhibit "2."*

13.     IOOI was at all material times the only charterer of the M/T PELAGOS.

14.     Certain disputes arose between the BCI and IOOI during the course of the charter party contract regarding IOOI's failure to pay demurrage, bunker costs and other expenses/damages due and owing to BCI under the charter party.

15.     As a result of IOOI's breach of the charter party contract, BCI has suffered, and will continue to suffer, losses in the total principal sum of $306,531.00, as best can now be estimated, exclusive of interest, attorneys' fees, and arbitration costs.

16.     Pursuant to clause K and clause 24 of the charter party, all disputes arising thereunder are to be submitted to arbitration in London with English law to apply

17.     Despite due demand, IOOI failed to pay the amounts due and owing under the charter party. As a result, BCI has commenced arbitration and appointed an arbitrator.

18.     In support of MWS' Motion to Vacate, Mohammed Hani Abdul Kader Al Bakri of MWS has filed with this Court his Declaration dated July 18, 2006 wherein he affirms that: MWS has no affiliation with IOOI and the two companies enjoy an arms-length business relationship. *See Declaration of Hani Bakri,* ¶¶ *5-6.* For the reasons that follow, and based upon even a cursory review of the attached exhibits, it is evident that MWS and IOOI are alter egos of each other and Mr. Bakri's declaration is, at best, a gross misrepresentation of the facts.

19.     In order to present the evidence in the clearest way possible this declaration is split into two parts, which have some overlapping elements. The first part of the declaration sets forth facts and evidence which demonstrate that IOOI is merely a shell corporation through which MWS conducts business. The second part of the declaration sets forth facts and evidence which demonstrate that both IOOI and MWS are two of several companies that are managed, operated and controlled as a single economic entity, known as the BAKRI GROUP, headed up by none other than Mr. Bakri himself.

## IOOI IS MERELY A SHELL CORPORATION
## THROUGH WHICH MWS CONDUCTS BUSINESS

20.      Contrary to Mr. Bakri's statements, it is not a sound commercial practice in the maritime industry to have another company habitually pay one's debts.  Making such payments on a systematic basis would be especially unusual without there being some formal relationship, i.e. owner/manager, between them.

21.      On May 6, 2005, an entity named "Marina World Shipping" made a payment on behalf of IOOI in regards to the DELTA SAILOR charter party.  This entity had no relationship to the underlying charter party, and IOOI was the only entity liable for the freight payment.  *See Message from IOOI confirming payment and Remittance Details annexed hereto as Exhibit "3."*

22.      No one from either IOOI or MWS informed us of any "assignment."

23.      When we brought Plaintiffs' claims to Tisdale & Lennon, LLC, we became aware of another attachment case involving the same parties, IOOI and MWS.  An agreement to cooperate with the plaintiff in the other case against IOOI and MWS was forged on May 4, 2006, before the instant action was initiated.

24.      From that other case, we learned that MWS had a history of making payments on behalf of IOOI.  Furthermore, it was revealed that IOOI referred to and treated MWS' bank account as its own.  When IOOI stated that payments would be coming from its account, the payment was always remitted under the name "Marina World Shipping."  Finally, it was discovered that MWS made payments on behalf of IOOI in areas where IOOI should have exclusive control.  The events summarized herein are described below.

25.      On February 22, 1998, IOOI sent a letter to a ship owner named "Garda Shipping" stating that it (IOOI) would make a payment regarding the charter of the M/V

SHIBUMI.   Particularly, IOOI stated that "we have arranged remittance of USD 390,000 to

Owners nominated banks account being freight through Riyad Bank Main, Branch, Jeddah with

value date 24/02/98." IOOI further stated, "we instructed our bank to send direct TLX to your

confirming remittance." The letter is signed "IOOI/JEDDAH." *See Letter from IOOI annexed*

*hereto as Exhibit "4."*

26.    However, when the payment came through on February 24, 1998, the name on the

remittance did not state IOOI, but instead, "Marina World Shipping." *See Bank Remittance*

*details confirming that Marina World Shipping paid IOOI's debt to the Plaintiff annexed hereto*

*as Exhibit "5."*

27.    MWS made freight payments on IOOI's behalf once again when it paid the

freight due under another charter party of the M/T "SHIBUMI" dated November 12, 1998. *See*

*Freight Remittance Details regarding charter party dated November 12, 1998 annexed hereto as*

*Exhibit "6."*

28.    As with the previous charter, IOOI sent a letter confirming that it (IOOI) would

have its banks pay the owners. However, when the payment came through the name on the

remittance details was not IOOI, but "Marina World Shipping." *See Letter from IOOI regarding*

*payment for November 12th charter annexed hereto as Exhibit "7."*

29.    The information provided by the other plaintiff seeking to attach IOOI and MWS

revealed that MWS does not only make payments on behalf of IOOI in regards to the monies due

under charter parties. On the contrary, MWS also acts and makes payments for IOOI in areas

where IOOI should have exclusive control.

30.    On March 13, 2001, MWS made a series of four payments to Waterson Hicks for

arbitration costs assessed against IOOI even though Marina World Shipping was not a party to

the arbitration. *See copies of Bank Remittance advices concerning payment of the "SHIBUMI"*

*Arbitration Award Costs into Waterson Hicks Account annexed hereto as Exhibit "8."*

31.    Upon information and belief, neither Waterson Hicks nor the plaintiff involved

therein were informed about any assignment between IOOI and MWS.

32.    Many other links between IOOI and MWS were exposed after the Order of

Maritime Attachment and Garnishment was issued on May 4, 2006.

33.    In addition to the four instances listed above, there are at least seven other

occasions where MWS paid IOOI's debts without apparent explanation or excuse. And, these

are only the payments I know of.

34.    IOOI was the only charterer named in the charter parties for all seven of the

payments. The payments are described below.

35.    MWS made a freight payment on IOOI's behalf in regards to the M/T PELAGOS

charter on July 12, 2005. *See Message from IOOI confirming payment and Bank Remittance*

*Details annexed hereto as Exhibits "9."*

36.    MWS also paid IOOI's debts in regards to the charter of the PRIGIPOS on

August 24, 2004. *See Bank Remittance Details annexed hereto as Exhibit "10."*

37.    Furthermore, MWS made three payments on IOOI's behalf in regards to the

NORD SEA charter on May 24, 2004, September 15, 2004 and January 18, 2005 respectively.

*See Exhibits "11," "12," and "13."*

38.    In addition, on December 21, 2005, MWS made a payment on behalf of IOOI for

the settlement of various demurrage claims in which IOOI was the only party liable in the

corresponding charter parties. As done previously, IOOI confirmed that it would pay against a

copy of the invoice. *See Message from IOOI, Invoice to IOOI and Wire Remittance details*

*annexed hereto as Exhibit "14."* However, when the payment came through, the name listed on the wire remittance was "Marina World Shipping."

39.   To our knowledge, IOOI has never made a payment on its own behalf. All payments received by the Plaintiffs in regards to their respective charters with IOOI came from MWS.

40.   MWS itself stated that it made yet another freight payment on IOOI's behalf on May 9, 2006. *See Bakri Declaration, ¶19.*

41.   It was discovered after the attachment action, that IOOI frequently withholds the payment of demurrage owed under its charters in order to negotiate a discount. This policy was revealed to us in a conversation with one of IOOI's representatives.

42.   As further evidence of the IOOI-MWS alter ego relationship is the fact that MWS and IOOI have the same address.

43.   Although Mr. Bakri claims that MWS and IOOI have separate leases, this is of no moment, as the *entire building* appears to owned and operated by a group of companies named the "BAKRI GROUP" which controls both IOOI and MWS as if they were one, single economic entity.

## IOOI AND MWS ARE DOMINATED AND CONTROLLED AS A SINGLE ECONOMIC ENTITY KNOWN AS THE BAKRI GROUP

44.   On May 15, 2006, we received a copy of the MRC investigation report on the "BAKRI GROUP" and "IOOI." This report details the companies working within the BAKRI GROUP and sets forth facts which link IOOI thereto. *See MRC Report annexed hereto as Exhibit "15."*

45.     Based on the MRC report and other information available, it is evident that IOOI and MWS are two of several companies which are operated, controlled and managed as a single economic enterprise known as the "BAKRI GROUP."

46.     The relationship between the BAKRI GROUP, IOOI, and MWS is made clear by an examination of the directors appointed on IOOI's and MWS' boards.

47.     We had investigative search performed regarding the directors of both IOOI and the MWS.

48.     The directors of MWS include Mr. Bakri and his immediate family members, who serve in many other positions within the BAKRI GROUP.

49.     In addition, two of the directors of IOOI are tied to the BAKRI GROUP.  The directors of IOOI are listed as Abdel Kader Mohamed El Amin, M. Othman Mahamd, and Saber Abu Ammara.

50.     Abdel Kader Mohamed El Amin works as the administrative officer of Ocean Marine Services, Fujairah.  Ocean Marine is believed to be a Bakri controlled ship agency to handle vessels taking bunkers from International Supply Co., Kari's Fujairah based bunker operation.

51.     It should be noted that Ocean Marine's PO Box has occasionally popped up as an alternative address for IOOI. *See Exhibit "15."*

52.     In addition, the director, Saber Abu Ammara, is a Jordanian who works in the legal department of Bakri Navigation.

53.     We have no doubt that the third director of IOOI, M. Othman Mahamad, is also connected to Bakri Navigation and the Bakri Group as a whole.

I declare under penalty of perjury that the foregoing is true and correct. Executed on July 25,

2006.

Hara Anastasatou

## AFFIRMATION OF SERVICE

I hereby certify that on July 25, 2006, a copy of the foregoing DECLARATION OF

HARA ANASTASATOU IN SUPPORT OF PLAINTIFFS' OPPOSITION TO MOTION TO

VACATE MARITIME ATTACHMENT was filed electronically and served by mail on anyone

unable to accept electronic filing.  Notice of this filing will be sent by e-mail to all parties by

operation of the Court's electronic filing system or by mail to anyone unable to accept electronic

filing.  Parties may access this filing through the Court's CM/ECF system.


By:_____/s/_____
        Nancy R. Peterson